AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>**The Subject Premises at 9250 SE 242nd Ave,**<br>**Damascus, OR 97089, as described in Attachment A** | )<br>)<br>)<br>)<br>)<br>)    Case No.   3:25-mc-779 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The Subject Premises at 9250 SE 242nd Ave, Damascus, OR 97089, as described in Attachment A hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 2252A(a)(2) | Receipt and Possession of Child Pornography |
| 18 U.S.C § 2252A(a)(5)(B) | |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Anthony T. Alcobia, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 4:11 p.m. _____ *(specify reliable electronic means)*.

Date: _____ 07/08/2025 _____

_____
*Judge's signature*

City and state: _ Portland, Oregon _

Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

The physical address of the **Target Premises** is 9250 SE 242nd Ave, Damascus, Oregon. The

**Target Premises** are described as a 1080 square feet, 2.0 bathroom, mobile / manufactured

home. The **Target Premises** are known to law enforcement due to the arrest of JOHNSON at the

location. The premises to be searched include all rooms, attics, garages, sheds, or storage rooms,

whether attached or detached and vehicles located on the curtilage and/or parked near the

premises that are linked to the premises or occupants living in the premises.

**ATTACHMENT B**

**Items to be Searched For, Seized, and Examined**

The items to be searched for, seized, and examined, are those items on the Premises located at 9250 SE 242nd Ave, Damascus, Oregon, as referenced in Attachment A, that contain contraband or are evidence, fruits, or instrumentalities of violations of Title *18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and Title *18 U.S.C. § 2252A(a)(5)(B)* – Possession of or Accessing with Intent to View Child Pornography (the "**Target Offenses**"), including:

**I.      Digital Evidence**

1.      Any mobile devices including cell phones belonging to or used by **JOHNSON**, that may have been used to commit or facilitate the **Target Offenses**;

2.      Any computers belonging to or used by **JOHNSON** that may have been used to facilitate violations of the **Target Offenses**, including any peripheral devices such as external hard drives, external disk drives, power supplies, modem, and routers;

3.      Any computer equipment or digital devices belonging to or used by **JOHNSON,** that are capable of being used to create, access, or store contraband or evidence, or are fruits or instrumentalities of the **Target Offenses**, including central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices including paging devices and cellular telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communication devices such as modems, routers, cables, and connections; storage media; and security devices;

4.      Any magnetic, electronic, or optical storage device belonging to or used by **JOHNSON** that is capable of storing data, such as floppy disks, hard disks, tapes, CD ROMs,

**Attachment B**                                                                                                      **Page 1**

CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, thumb drives, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones capable of being used to commit or further the crimes referenced above, or to create, access, or store contraband, or evidence, or are fruits or instrumentalities of such crimes;

5.      Any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

6.      Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

7.      Any physical keys, encryption devices, dongles, or similar physical items which are necessary to gain access to the computer equipment, storage devices, or data;

8.      Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, digital devices, storage devices, cloud-based storage accounts, or data; and

9.      All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) of the computers or digital devices during the time the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online

**Attachment B**                                                                 **Page 2**

service usage; screen names or usernames, and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software.

## II. Records, Documents, and Visual Depictions

10. Any records, documents, or materials, including correspondence, that pertain to any account, record, data, file, any other social media application or cloud-based storage, or any other business that can facilitate the Target Offenses.

11. Any records, documents, or materials, including any communications or messages that pertain to any account, record, data, or any other internet-based chat application / video that can facilitate the Target Offenses.

12. Any records, documents, or materials, including GPS location data, messages, calendar schedules, work schedule, and other data, that would identify the location of the digital device or the user of the digital device at a specific moment in time (for the purposes of comparing it when sexually explicit videos were made or where the user was located when they received the images/videos).

13. Any records, documents, or materials, including correspondence, that pertain to the production, transportation, distribution, receipt, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

14. All originals and copies (physical or digital) of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

15. Any motion pictures or digital video clips of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; video recordings which are self-produced and pertain to sexually explicit images of minors; or video

**Attachment B**                                                                                        **Page 3**

recordings of minors which may assist in the location of minor victims of child exploitation or child abuse.

16.      Any records, documents, or materials which include offers to transmit, through interstate commerce by any means (including by computer), any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

17.      Any records, documents, or materials relating to the production, reproduction, receipt, shipment, trade, purchase, or a transaction of any kind involving the transmission, through interstate commerce (including by computer), of any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

18.      Any records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

19.      Any records of internet usage, including records containing screen names, usernames, and e-mail addresses, and identities assumed for the purposes of communication on the internet. These records include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage media, including CDs or DVDs.

20.      Any records, documents, or materials referring or pertaining to communications with others, whether in person, by telephone, or online, for the purpose of distributing or transporting child pornography, including chat logs, call logs, address book or contact list entries, and digital images or videos sent or received.

**Attachment B**                                                         **Page 4**

21.    Any records, documents, or materials, including correspondence, that could assist in identifying the user of a particular cell phone, computer, or other digital device at a specific moment in time.

22.    Information or evidence of any websites visited, photographs, videos, images, reports, definitions, stories, books, music, lyrics, emails, videos, messages, and or notes associated with child pornography or those who collect, disseminate, or trade in child pornography.

As used above, the terms "records," "documents," "programs," "applications," or "materials" include records, documents, programs, applications or materials created, modified or stored in any form including digital or electronic form.

### Search Procedure

23.    In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

a.    *On-site search, if practicable.*  Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to determine if digital devices can be searched on site in a reasonable amount of time without jeopardizing the ability to preserve data on the devices.  Any device searched on site will be seized only if it contains data falling within the list of items to be seized as set forth in the warrant and herein.

b.    *On-site imaging, if practicable.*  If a digital device cannot be searched on site as described above, the computer personnel, if present, will determine whether the device can be imaged on site in a reasonable amount of time without jeopardizing the ability to preserve

**Attachment B**                                                                                    **Page 5**

the data.

c.    *Seizure of digital devices for off-site imaging and search.*  If no computer personnel are present at the execution of the search warrant, or if they determine that a digital device cannot be searched or imaged on site in a reasonable amount of time and without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

d.    Law enforcement personnel will examine the digital device to extract and seize any data that falls within the list of items to be seized as set forth in the warrant and herein. To the extent they discover data that falls outside the scope of the warrant that they believe should be seized (e.g., contraband or evidence of other crimes), they will seek an additional warrant.

e.    Law enforcement personnel will use procedures designed to identify items to be seized under the warrant.  These procedures may include the use of a "hash value" library to exclude normal operating system files that do not need to be searched.  In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

f.    If the digital device was seized or imaged, law enforcement personnel will perform an initial search of the original digital device or image within a reasonable amount of time not to exceed 120 days from the date the warrant was executed.  If, after conducting the initial search, law enforcement personnel determine that an original digital device contains any data falling within the list of items to be seized pursuant to this warrant, the government will retain the original digital device to, among other things, litigate the admissibility/authenticity of

**Attachment B**                                                                                      **Page 6**

the seized items at trial, ensure the integrity of the copies, ensure the adequacy of chain of custody, and resolve any issues regarding contamination of the evidence. If the government needs additional time to determine whether an original digital device or image contains any data falling within the list of items to be seized pursuant to this warrant, it may seek an extension of time from the Court within the original 120-day period from the date the warrant was executed. The government shall complete the search of the digital device or image within 180 days of the date the warrant was executed. If the government needs additional time to complete the search, it may seek an extension of time from the Court.

g.       If, at the conclusion of the search, law enforcement personnel determine that specific files or file folders on an original digital device or image do not contain any data falling within the list of items to be seized pursuant to the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the list of items to be seized pursuant to the warrant, as well as data within the operating system, file system, or software application relating or pertaining to files or data falling within the list of items to be seized pursuant to the warrant (such as log files, registry data, and the like), through the conclusion of the case.

h.       If an original digital device does not contain any data falling within the list of items to be seized pursuant to this warrant, the government will return that original data device to its owner within a reasonable time following the search of that original data device and will seal any image of the device, absent further authorization from the Court.

**Attachment B**                                                                                                     **Page 7**

STATE OF OREGON, ss:                    AFFIDAVIT OF ANTHONY ALCOBIA

**Affidavit in Support of an Application**
**Under Rule 41 for a Search Warrant**

I, Anthony Alcobia, being duly sworn, do hereby depose and state as follows:

**<u>Introduction and Agent Background</u>**

1.      I have been employed as a Special Agent (SA) with Homeland Security

Investigations (HSI) since January 2019.   I am currently assigned to work out of the Deschutes

County Digital Forensics Lab (DFL) and, specifically, tasked to investigate violation of laws

linked to Internet Crimes Against Children (ICAC) for HSI Bend.   The DFL includes members

of the Deschutes County Sheriff's Department, Bend Police Department, Redmond Police

Department, Oregon Department of Justice, Federal Bureau of Investigation, Oregon State

Police, U.S. Marshals, U.S. Attorney's Office and the Deschutes District Attorney's Office.   As

a HSI SA, I investigate criminal violations relating to child exploitation and child pornography,

including violations pertaining to the illegal production, distribution, receipt, and possession of

child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.   I have been a full-time

ICAC investigator since September 2022.   I have participated in the service of numerous search

warrants involving child exploitation and/or child pornography offenses and have had the

opportunity to observe and review numerous examples of child pornography (as defined in 18

U.S.C. § 2256) in various forms of media.   Additionally, I have been a certified ICAC

Undercover (UC) Chat Special Agent since May 2022. I have participated in online undercover

communications using multiple social media messaging platforms.   In my undercover role, I

have communicated with numerous suspected and identified adults interested in having illegal

**Affidavit of Anthony Alcobia**                                        **Page  1**

sexual contact with a minor and the production, distribution, and receipt of child pornography

aka Child Sexual Abuse Material (CSAM).   I have been the lead case agent for over 5 cases for

suspects violating California law 664/288(a)- Attempted Lewd and Lascivious Acts with a Minor

Child, 288.3(a) - Contacting a Minor for Sexual Purposes, 288.4(b) - Arranging a Meeting With

a Minor For Lewd Purposes. I have participated in over 12 arrests of adults attempting to meet a

minor for sex. I have also observed and reviewed numerous chat communications between actual

minor victims and adults.

      2.      I submit this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant authorizing the search of the premises located at 9250

SE 242nd Ave, Damascus, Oregon (hereinafter "**Target Premises**") as described in Attachment

A, for contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C.

§§ 2252A(a)(2) and (a)(5)(B) (involving the receipt and possession of child pornography) as

described in Attachment B.

      3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.   The facts

set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

**Affidavit of Anthony Alcobia**                                        **Page  2**

## Applicable Law

4.      *Title 18, United States Code, Section 2252A(a)(2)* makes it a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

5.      *Title 18, United States Code, Section 2252A(a)(5)(B)* makes it a crime to knowingly possess or access with intent to view child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.   The term "child pornography" is defined in 18 U.S.C. § 2256(8).

## Background on Computers and Child Pornography

9.      Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers, computer technology, and the Internet have drastically changed how child pornography is produced and distributed.   Computers serve four basic functions in connection with child pornography:   production, communication, distribution, and storage.

10.      Child pornographers can upload images or video clips directly from a digital camera to a computer.   Once uploaded, they can easily be edited, manipulated, copied, and distributed.   Paper photographs can be transferred to a computer-readable format and uploaded to a computer using a scanner.   Once uploaded, they too can easily be edited, manipulated, copied, and distributed.   A modem allows any computer to connect to another computer through

**Affidavit of Anthony Alcobia**                                                                 **Page  3**

a telephone, cable, or wireless connection.   Through the Internet, electronic contact can be made to literally millions of computers around the world.

11.    The computer's ability to store images in digital form makes it an ideal repository for child pornography.   The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously in the last several years.   These drives can store thousands of images at very high resolution.   Images and videos of child pornography can also be stored on removable data storage media, such as external hard drives, thumb drives, media cards, and the like, many of which are small and highly portable and easily concealed, including on someone's person or inside their vehicle.

12.    The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion, including Internet Relay Chat, instant messaging programs such as Kik, bulletin board services, e-mail, and "peer-to-peer" (P2P) file sharing programs such as LimeWire and eMule, and networks such as eDonkey, Gnutella, ARES, Tumblr, and BitTorrent, among others.   Collectors and distributors of child pornography sometimes also use online resources such as "cloud" storage services to store and retrieve child pornography.   Such online services allow a user to set up an account with a remote computing service that provides e mail services as well as electronic storage of computer files in a variety of formats.   A user can set up an online storage account from any computer with access to the Internet and can access stored files using any device capable of connecting to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.

**Affidavit of Anthony Alcobia**                                                           **Page  4**

13.    An Internet Protocol (IP) address is a unique number that identifies devices such as computers, modems, routers, printers, and the like use to identify and communicate with each other over a network.   An IP address can be thought of as a street address.   Just as a street address identifies a particular building, an IP address identifies a particular Internet or network access device.   When a user logs on to his/her Internet Service Provider (ISP), they are assigned an IP address for the purpose of communication over the network.   An IP address can be statically assigned, meaning the IP address does not change from one Internet session to another, or dynamically assigned, meaning a user receives a different IP address each time the user accesses the Internet.   An IP address can only be assigned to one user at a time, and ISPs keep records of who IP addresses are assigned to by date and time.   Similarly, cell phone service providers also generally keep IP records that can identify what device (cell phone) utilized the IP address on a certain date and time.

14.    As with most digital technology, communications made from a computer are often saved or stored on that computer.   Storing this information can be intentional, for example, by saving an e mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.   Digital information can also be retained unintentionally.   Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.   In addition to electronic communications, a computer user's Internet activities generally leave traces in the computer's web cache and Internet history files.   A forensic examiner often can recover evidence that shows whether a computer contains P2P software, when the computer was sharing files, and some of the files that

**Affidavit of Anthony Alcobia**                                                                                                   **Page 5**

were uploaded or downloaded.   Such information is often maintained indefinitely until
overwritten by other data.

15.    I know, based on my training and experience and on conversations I have had
with others who investigate child exploitation offenses, that people who have a sexual interest in
children, including persons who collect and trade in child pornography, often receive sexual
gratification from images and video clips depicting the sexual exploitation of children.   They
may also use such images and videos to lower the inhibitions of children who they wish to
sexually abuse.   Such persons maintain their collections of child pornography in safe, secure,
and private locations, such as their residence or vehicle, and on computers and digital storage
media under their direct control.   Such persons often maintain their collections, which are
considered prized possessions, for long periods of time, and prefer not to be without their
collections for any prolonged time.   In some recent cases, however, some persons with a sexual
interest in children have been found to download, view, and delete child pornography on a
cyclical and repetitive basis, rather than storing a collection of child pornography indefinitely.

16.    I also know from my training and experience that many people who download
child pornography from the Internet, and those who collect child pornography, frequently save
images and videos of child pornography on their computers and/or transfer copies to other
computers and storage media, including cloud storage accounts, external hard drives, thumb
drives, flash drives, SD cards, and CDs or DVDs.   Moreover, it is common in child pornography
investigations to find child pornography on multiple devices and/or storage media located in
suspects' homes, rather than on a single device.

**Affidavit of Anthony Alcobia**                                                                 **Page  6**

17.     I know based on my training and experience that many social media applications, such as Facebook, Instagram, Twitter, Snap Chat, Kik messenger and others can be directly accessed and used with one's cellular phone.   Often, these applications require the user to download the application directly to their phone, which then allows seamless use between the cellular phone and the social media website.

## Statement of Probable Cause

18.     In 2018, target Jacob JOHNSON (DOB: XX-XX-1991) was the subject of an HSI investigation of federal child pornography offenses.   The investigation targeted individuals who had paid in Bitcoin to receive child pornography through a specific website (the "Target Website"), which was used to host and distribute images and videos of child sexual exploitation material (CSAM).[1] Users of the Target Website could create a free account by providing a username and password, which allowed them to preview videos available on the website.   In order to download videos from the Target Website, users had to spend "points," which they could earn by (1) uploading CSAM to the Target Website, (2) referring new users to the Target Website, (3) paying for either an unlimited subscription or a set number of "points" using Bitcoin.   Through HSI's investigation, law enforcement agents learned that the Target Website appeared to assign each user who purchases access to content through the website a unique Bitcoin address to which the user can send funds.

19.     In March of 2018, foreign law enforcement executed a search warrant and seized

---

[1] While the Target Website may have hosted some images depicting exclusively adults, the overwhelming majority of images observed by law enforcement agents who accessed the Target website in late 2017 and early 2018 were CSAM.   The upload page on the Target Website stated: "Do not upload adult porn."

**Affidavit of Anthony Alcobia**                                                                 **Page  7**

the Target Website's server and associated electronic storage media from the home of the website's administrator.   Foreign law enforcement then provided a forensic image of the seized devices to U.S. law enforcement, which obtained a warrant to review the forensic image.   That image contained over 120,000 videos hosted on the Target Website, which appeared to consist entirely of CSAM, as well as customer data for the users of the website.   The customer data generally identified which user was associated with which Bitcoin payment to the Target Website and included download data confirming that users downloaded content from the website.   A review of a sample of Bitcoin payments to the Target Website, cross-referenced against the user ID and download data from the seized server, revealed that each payment to the Target Website resulted in the user downloading at least one video from the website.

20.     During the investigation of the Target Website and its users, JOHNSON was identified as having purchased Bitcoins and used them to access the Target Website.   A response to a subpoena to the U.S. BTC Exchange revealed a Bitcoin account created in late 2016 that included the following identifiers:

Name: Jacob Johnson

Email: biochemjake@gmail.com

Address: 1959 SW Canyon Drive, Redmond, OR 97756

Date of Birth: XX/XX/1991 [JOHNSON's birthdate]

The Bitcoin account was associated with a Bank of the Cascades Mastercard in the name of Jacob T. Johnson.

21.     JOHNSON has been required to register as a sex offender since at least 2014 following his conviction for Attempted Sexual Abuse in the First Degree.   According to

**Affidavit of Anthony Alcobia**                                                                                      **Page  8**

investigation reports from Redmond Police Department related to JOHNSON's conviction, the case involved JOHNSON molesting a seven-year-old victim by rubbing her vagina with both his hand and his penis.   On his sex offender registration in March of 2016, JOHNSON reported his address as 1959 SW Canyon Drive, Redmond, OR.

22.    Between December 29, 2016, and January 27, 2018, JOHNSON's Bitcoin wallet engaged in two transactions with Bitcoin addresses associated with the Target Website. The first transaction occurred on or about December 29, 2016, for approximately 0.05 Bitcoin.   The second transaction occurred on or about January 28, 2018, for approximately 0.006 Bitcoin.

23.    HSI investigators identified approximately 20 videos that JOHNSON downloaded from the Target Website, which contained child pornography.   Many of the videos have file names that reference the age of the victims depicted in the video and the types of sexual abuse inflicted on them.

24.    On December 6, 2018, a search warrant issued by the Deschutes County Circuit Court was executed at JOHNSON's then-current residence.   Several digital devices were seized from the residence.   JOHNSON was not arrested at that time.

25.    On December 13, 2018, a Detective with the Deschutes County Sheriff's Office forensically reviewed the contents of a cell phone that was seized from JOHSON during the search warrant.   On the phone, the Detective located a database which tracks media on the device itself and on external storage connected to the device, including file names, file sizes, and the duration of videos.   The database contained information indicating that an external storage device had been connected to the phone on August 25, 2018.   The database also contained the name and location of thumbnail images created as "preview" images for some of the videos.

**Affidavit of Anthony Alcobia**                                                                 **Page  9**

The Detective compared the information in this database, including the thumbnail images, with the information provided by HSI about the videos JOHNSON downloaded from the Target Website. The Detective found that at least ten of the CSAM videos reported by HSI were present on the external storage device that had been connected to the phone. The Detective also found thumbnails that depicted the sexual abuse of children that were not included in the information provided by HSI.

26.     Specifically, one of the thumbnails the Detective found on the phone depicted a prepubescent female child, naked from the waist down, lying on her back with her legs spread apart and elevated and her vagina and anus exposed.   This thumbnail appeared to be a still image from a full video reported by HSI as a file that JOHNSON had downloaded from the Target Website. The name of the video was "Little girl loves dogs fxxk_webcam_Part02_ (part01_ID_624727).mp4."   Another thumbnail depicted an erect penis in the mouth of a prepubescent female child.   This thumbnail appeared to be a still image from a full video reported by HSI as a file that JOHNSON had downloaded from the Target Website.   The name of the video was "231055_20162017.mp4."

27.     While the investigation and review of his electronic devices were ongoing, JOHNSON stopped going to work and moved out of his residence without updating his sex offender registration as required. In February of 2019, JOHNSON was indicted in Deschutes County for 12 counts of Encouraging Child Sexual Abuse in the First Degree and another 12 counts of Encouraging Child Sexual Abuse in the Second Degree, and law enforcement officers attempted to execute an arrest warrant on those charges. However, they were unable to locate JOHNSON and his whereabouts remained unknown for years.

**Affidavit of Anthony Alcobia**                                                                          **Page  10**

28.    On May 28, 2025, I became aware of the arrest of JOHNSON in Clackamas County, Oregon. JOHNSON was arrested on the outstanding state warrant. According to Clackamas County police reports, JOHNSON has been living under the assumed identity of "Shae Jamison" for at least the duration of his relationship with his girlfriend, who ultimately reported him to the police after discovering JOHNSON's true identity and learning that he was an out-of-compliance sex offender.   JOHNSON was located and arrested at his residence at 9250 SE 242nd Ave, Damascus, OR 97089 on April 30, 2025.

29.    JOHNSON's girlfriend told police that she and JOHNSON dated, on and off, for the past year. She lived with JOHNSON approximately 4-5 days a week at the residence located at 9250 SE 242nd Ave, Damascus, OR 97089. She knew JOHNSON by a different identity ("Shae Jamison") for the year prior. By happenstance, she discovered JOHNSON had numerous fake identities and learned his real identity. She also learned there was a warrant out for JOHNSON's arrest. On her own accord, she collected multiple items that she believed might be relevant to crimes JOHNSON possibly committed and shared them with law enforcement. These items included a silver Hewlett Packard laptop and a black Zalman computer tower. She never saw CSAM on JOHNSON's computers, but she had concerns regarding how "secretive" JOHNSON was about what was stored on them. She provided Clackamas County Sheriff's Office (CCSO) consent to enter her and JOHNSON's shared residence.

30.    During his arrest, law enforcement seized 14 forged documents that JOHNSON had apparently used to conceal his true identity. The arrest report authored by CCSO stated that investigators found 4 fake identities and 14 forged documents that JOHNSON used and/or possessed. During the arrest, police seized the following documents from JOHNSON:

**Affidavit of Anthony Alcobia**                                                        **Page  11**

Identity 1 Documents - Shae R Jamison IL Driver's License (x3) and Social Security Card 1

Identity 2 Documents - Joshua T Mitchell IL Driver's License (x2) and Social Security Card 2

Identity 3 Documents - Ryan S Jamison IL Driver's License (x2) and Social Security Card 3

Identity 4 Documents - Brandon Kelly Lindner - Social Security Card 4 (x4)

31.     On June 27, 2025, the Honorable Youlee Yim You signed a federal search warrant, case number 3:25-mc-745, authorizing a search of JOHNSON's laptop and computer tower for evidence of violations of 18 U.S.C. § 1028, related to the use or possession of fraudulent identification documents.   That same day, during a forensic preview of the computer tower, a Detective with the Deschutes County Sheriff's Office Digital Forensics Laboratory (DFL) discovered 4 images associated with the "VLC player" program on the device that were determined to be CSAM.   The DFL informed me of the discovery and described the CSAM images as depicting an apparent female toddler.   One image showed a penis inserted into the toddler's anus.   Following the discovery of CSAM on the computer, the search of both devices was immediately stopped for the purpose of applying for another warrant.

32.     On June 30, 2025, the Honorable Jolie Russo signed a federal search warrant, case number 3:25-mc-751, authorizing a search of the laptop and computer tower for evidence of violations of 18 U.S.C. §§ 2252A(a)(2), and (a)(5)(B) related to the transportation, receipt and possession of child pornography. Pursuant to this new warrant, the DFL resumed its review of the two devices.

33.     On July 2, 2025, a Detective with the Deschutes County Sheriff's Office Digital Forensics Laboratory (DFL), explained to SA Alcobia that JOHNSON's laptop and computer tower both contained numerous CSAM thumbnail images. The DFL Detective further explained

**Affidavit of Anthony Alcobia**                                                    **Page  12**

that the CSAM image thumbnails' presence on the devices came from a user opening and viewing the CSAM directly from external storage device that was not presently connected to either device. The DFL Detective clarified that the CSAM was derived from an external storage device and not an internet based storage location, such as a weblinks and internet based storage applications. The DFL's review of JOHNSON's laptop and computer tower is ongoing. .

34.     On July 2, 2025, HSI SA Alcobia and DFL ICAC Detective M. Meyer conducted an interview with JOHNSON's girlfriend (herein referred to as Witness 1). Witness 1 stated JOHNSON was aware and consented to Witness 1 moving his personal belonging which were currently located at the **Target Premises** to a nearby storage unit. Witness 1 explained that the **Target Premises** was rented by JOHNSON and the landlord wished to rent the **Target Premises** to someone else. Witness 1 stated she still had access to the **Target Premises** and that she would begin moving JOHNSON's property from the **Target Premises** soon. Witness 1 stated she personally observed multiple storage capable devices at the **Target Premises**, to include "thumb drives" and a "server." Witness 1 stated she had a background in "IT" aka "information technology" and that she did not understand why JOHNSON had a "server," but knows it's located at the **Target Premises**.

<u>**Search and Seizure of Digital Data**</u>

35.     This application seeks permission to search for and seize evidence of the crimes described above, including evidence of how computers, digital devices, and digital storage media were used, the purpose of their use, and who used them.

36.     Based on my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, I know that data in

digital form can be stored on a variety of systems and storage devices, including hard disk drives, floppy disks, compact disks, magnetic tapes, flash drives, and memory chips.   Some of these devices can be smaller than a thumbnail and can take several forms, including thumb drives, secure digital media used in phones and cameras, personal music devices, and similar items.

**Removal of Data Storage Devices**

37.    I know that a forensic image is an exact physical copy of a data storage device. A forensic image captures all data on the subject media without viewing or changing the data in any way.   Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of data for information subject to seizure pursuant to the warrant.   I also know that during a search of premises it is not always possible to create a forensic image of or search digital devices or media for data for various reasons, including the following:

a.    Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment.   Because there are so many different types of digital devices and software in use today, it is difficult to anticipate all the necessary technical manuals, specialized equipment, and specific expertise necessary to conduct a thorough search of the media to ensure that the data will be preserved and evaluated in a useful manner.

b.    Searching digital devices can require the use of precise, scientific procedures designed to maintain the integrity of the evidence and to recover latent data not readily apparent to the casual user.   The recovery of such data may require the use of special software and procedures, such as those used in a law enforcement laboratory.

c.    The volume of data stored on many digital devices is typically so large that it is generally highly impractical to search for data during the execution of a physical search of

**Affidavit of Anthony Alcobia**                                                                        **Page  14**

premises.   Storage devices capable of storing 500 gigabytes to several terabytes of data are now commonplace in desktop computers.   It can take several hours, or even days, to image a single hard drive; the larger the drive, the longer it takes.   Depending upon the number and size of the devices, the length of time that agents must remain onsite to image and examine digital devices can make doing an on-site search impractical.

### Laboratory Setting May Be Essential for Complete and Accurate Analysis of Data

38.    Since digital data may be vulnerable to inadvertent modification or destruction, a controlled environment, such as a law enforcement laboratory, may be essential to conduct a complete and accurate analysis of the digital devices from which the data will be extracted. Software used in a laboratory setting can often reveal the true nature of data.   Therefore, a computer forensic reviewer needs a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or an instrumentality of a crime.

39.    Analyzing the contents of a computer or other electronic storage device, even without significant technical difficulties, can be very challenging, and a variety of search and analytical methods must be used.   For example, searching by keywords, which is a limited text-based search, often yields thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.   Merely finding a relevant hit does not end the review process.   The computer may have stored information about the data at issue which may not be searchable text, such as: who created it; when and how it was created, downloaded, or copied; when it was last accessed; when it was last modified; when it was last printed; and when it was deleted.   The relevance of this kind of data is often contextual.

**Affidavit of Anthony Alcobia**                                              **Page 15**

Furthermore, many common email, database, and spreadsheet applications do not store data as searchable text, thereby necessitating additional search procedures.   To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed data requires a search of events that occurred on the computer in the time periods surrounding activity regarding the relevant data.   Information about which users logged in, whether users shared passwords, whether a computer was connected to other computers or networks, and whether the users accessed or used other programs or services in the relevant period, can help determine who was sitting at the keyboard.

40.    *Latent Data:*   Searching digital devices can require the use of precise scientific procedures designed to maintain the integrity of the evidence and to recover latent data.   The recovery of such data may require the use of special software and procedures.   Data that represents electronic files or remnants of such files can be recovered months or even years after it has been downloaded onto a hard drive, deleted, or viewed via the Internet.   Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.   Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.   Therefore, deleted files, or remnants of deleted files, may reside in space on the hard drive or other storage media that is not allocated to an active file.   In addition, a computer's operating system may keep a record of deleted data in a swap or recovery file or in a program specifically designed to restore the computer's settings in the event of a system failure.

41.    *Contextual Data*:

a.    In some instances, the computer "writes" to storage media without the specific

**Affidavit of Anthony Alcobia**                                                                           **Page  16**

knowledge or permission of the user.   Generally, data or files that have been received via the Internet are automatically downloaded into a temporary Internet directory or cache.   The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage.   Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

b.      Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used.   Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords.   Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use.   Computer file systems can record data about the dates files were created and the sequence in which they were created.   This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of

**Affidavit of Anthony Alcobia**                                                                 **Page  17**

evidence in other locations.   Such data may also lead to exculpatory evidence.

c.      Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software, may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application.   Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users.   This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations.   Such data may also lead to exculpatory evidence.   Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## Search Procedure

42.     In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

a.      *On site search, if practicable.*   Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to determine if digital devices can be searched on site in a reasonable amount of time and without jeopardizing the

**Affidavit of Anthony Alcobia**                                                      **Page  18**

ability to preserve data on the devices.   Any device searched on site will be seized only if it contains data falling within the list of items to be seized as set forth in the warrant and in Attachment B.

      b.    *On site imaging, if practicable.*   If a digital device cannot be searched on site as described above, the computer personnel, if present, will determine whether the device can be imaged on site in a reasonable amount of time without jeopardizing the ability to preserve the data.

      c.    *Seizure of digital devices for off-site imaging and search.*   If no computer personnel are present at the execution of the search warrant, or if computer personnel that are on-site determine that a digital device cannot be searched or imaged on site in a reasonable amount of time and without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

      d.    Law enforcement personnel will examine the digital device to extract and seize any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.   To the extent they discover data that falls outside the scope of the warrant that they believe should be seized (e.g., contraband or evidence of other crimes), they will seek an additional warrant.

      e.    Law enforcement personnel will use procedures designed to identify items to be seized under the warrant.   These procedures may include the use of a "hash value" library to exclude normal operating system files that do not need to be searched.   In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

**Affidavit of Anthony Alcobia**                                                                 **Page  19**

f.      If the digital device was seized or imaged, law enforcement personnel will perform an initial search of the original digital device or image within a reasonable amount of time not to exceed 120 days from the date the warrant was executed.   If, after conducting the initial search, law enforcement personnel determine that an original digital device contains any data falling within the list of items to be seized pursuant to the warrant, the government will retain the original digital device to, among other things, litigate the admissibility/authenticity of the seized items at trial, ensure the integrity of the copies, ensure the adequacy of chain of custody, and resolve any issues regarding contamination of the evidence.   If the government needs additional time to determine whether an original digital device or image contains any data falling within the list of items to be seized pursuant to this warrant, it may seek an extension of time from the Court within the original 120-day period from the date the warrant was executed. The government shall complete the search of the digital device or image within 180 days of the date the warrant was executed.   If the government needs additional time to complete the search, it may seek an extension of time from the Court.

g.      If, at the conclusion of the search, law enforcement personnel determine that particular files or file folders on an original digital device or image do not contain any data that fall within the list of items to be seized pursuant to the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the list of items to be seized pursuant to the warrant, as well as data within the operating system, file system, or software application relating or pertaining to files or data falling within the list of items to be seized pursuant to the warrant (such as log files, registry data, and the like), through the conclusion of the case.

**Affidavit of Anthony Alcobia**                                                                                                    **Page  20**

h.    If an original digital device does not contain any data falling within the list of items to be seized pursuant to this warrant, the government will return that original data device to its owner within a reasonable time following the search of that original data device and will seal any image of the device, absent further authorization from the Court.

**<u>Items to be Seized</u>**

43.    To search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize, image, copy, and/or search the following items, subject to the procedures set forth herein:

a.    Any computer equipment or digital devices that are capable of being used to commit or further the crimes outlined above, or to create, access, or store the types of contraband and evidence, fruits, or instrumentalities of such crimes, as set forth in Attachment B;

b.    Any computer equipment or digital devices used to facilitate the transmission, creation, display, encoding, or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners that are capable of being used to commit or further the crimes outlined above, or to create, access, process, or store the types of contraband and evidence, fruits, or instrumentalities of such crimes, as set forth in Attachment B;

c.    Any magnetic, electronic, or optical storage device capable of storing data, such as thumb drives and other USB data storage devices, floppy disks, hard disks, tapes, CD ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, iPods, and cell phones capable of being used to commit or further the crimes outlined above, or to

**Affidavit of Anthony Alcobia**                                    **Page  21**

create, access, or store the types of contraband and evidence, fruits, or instrumentalities of such crimes, as set forth in Attachment B;

      d.     Any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

      e.     Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

      f.     Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the computer equipment, storage devices, or data, and any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices, or data; and

      g.     All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) of the computers or digital devices during any time period in which the device was used to upload, download, store, receive, possess, or view child pornography, including the web browser's history; temporary Internet files; cookies, bookmarked or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software.

**<u>Retention of Image</u>**

**Affidavit of Anthony Alcobia**                                 **Page  22**

44. The government will retain a forensic image of each electronic storage device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering with, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

### Inventory and Return

45. With respect to the seizure of electronic storage media or the seizure or imaging of electronically stored information, the search warrant return to the Court will describe the physical storage media that were seized or imaged.

46. The government has made no prior effort in any judicial forum to obtain the materials sought in this requested warrant.

### Conclusion

47. Based on the foregoing, I have probable cause to believe, and I do believe, that an individual at the **Target Premises**, believed to be JOHNSON, knowingly and unlawfully received and possessed child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (a)(5)(B), and that contraband, evidence, fruits, and instrumentalities of those offenses, as described above and in Attachment B, will be located at the **Target Premises**, which is described above and in Attachment A. I therefore request that the Court issue a warrant authorizing a search of the **Target Premises** described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

**Affidavit of Anthony Alcobia**                                                                                **Page 23**

48.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Mira Chernick.   AUSA Chernick informed me that in her opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

<u>By phone pursuant to Fed R. Crim. P. 4.1</u>
ANTHONY ALCOBIA
Special Agent HSI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

_____ a.m./p.m. on July_____, 2025

HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

**Affidavit of Anthony Alcobia**                                                **Page  24**